**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STACEY STRAUSS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH WALSH, FRANK BARKLEY,** | : | |
| **CITY OF PHILADELPHIA and** | : | |
| **PHILADELPHIA POLICE DEPARTMENT** | : | **NO. 01-3625** |

**M E M O R A N D U M**

**WALDMAN, J.**                                                      **December 17, 2002**

### I. Introduction

Plaintiff was injured when an off-duty Philadelphia police officer caused another off-duty officer's gun to discharge while they were socializing in a bar. Plaintiff asserted claims against all defendants under 42 U.S.C. § 1983 as well as state law claims for negligence and intimidation.[1] Plaintiff asserted additional state law claims against the individual defendants for assault, battery and intentional infliction of emotional distress.[2]

---

[1] Plaintiff has since stipulated that the Philadelphia Police Department is not a separate corporate entity subject to suit.

[2] This action was commenced in the Court of Common Pleas of Philadelphia from which it was removed to this court pursuant to 28 U.S.C. § 1441(b). For reasons not altogether clear, plaintiff initiated a subsequent action in the Court of Common Pleas of Philadelphia against defendant Walsh alone in which she asserted the same claims as those asserted against Mr. Walsh in the instant case. That case too was then removed to this court where it has been consolidated with the above action pursuant to Fed. R. Civ. P. 42(a).

Presently before the court are the motions of the City of Philadelphia and Joseph Walsh for summary judgment.[3]

## II.  **Legal Standard**

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).  Only facts that may affect the outcome of a case are "material."  See Anderson, 477 U.S. at 248.  All reasonable inferences from the record must be drawn in favor of the non-movant.  See id. at 256.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See J.F. Feeser, Inc. v.

---

[3] As it appeared that defendant Barclay would also be entitled to judgment as a matter of law, particularly on plaintiff's federal claims, on the same determinative issues if it were determined that defendant Walsh were so entitled, the court by order of December 2, 2002 gave plaintiff eleven days to supplement the record with any relevant evidence or pertinent submission which might show otherwise.  On December 13, 2002, the parties filed a written stipulation dismissing with prejudice all claims against defendant Barclay.

Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 499 U.S. 921 (1991).  A plaintiff cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather must present evidence from which a jury could reasonably find in his favor.  See Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

### III. **Facts**

From the competent evidence of record, as uncontroverted or otherwise viewed in a light most favorable to plaintiff, the pertinent facts are as follow.

At 9:30 p.m. on the evening of June 2, 2000, plaintiff and her boyfriend arrived at Pat's Pub in Philadelphia to meet friends and socialize.  Several off-duty police officers including the two named individual defendants were also socializing at Pat's after a soccer practice.  Defendant Walsh went to the bar and asked defendant Barclay to watch his canvas sport bag while he was gone.[4]  The bag contained his ID, his

---

[4]It is clear from the record that "Barkley" is a misspelling and that this officer is actually Frank Barclay.  Although there has been no motion or stipulation to correct the caption, the court will utilize the correct spelling in referring to this party.

wallet and a loaded Glock Model 17 service pistol which had no safety. Mr. Walsh told Mr. Barclay that there was a firearm in the bag. Mr. Barclay does not recall hearing this. Mr. Barclay had consumed four or five beers at the time.[5]

Plaintiff approached Mr. Barclay and was talking with him when, at approximately 10:30 p.m., she heard a loud pop and felt a searing pain in her right leg which was bleeding. When plaintiff asked what had happened, Mr. Barclay initially said that he had set off a firecracker. Mr. Walsh heard the noise and approached plaintiff and Mr. Barclay. He picked up his canvas bag. Mr. Barclay then related that he had reached into the canvas bag to remove the wallet as a practical joke and had accidentally discharged the firearm as he pulled his hand out of the bag.

Mr. Barclay followed plaintiff into the ladies room to check on her leg. He apologized profusely to plaintiff and asked her not to report the incident as he and others could lose their jobs. Plaintiff responded "it's okay, I understand that it's an accident." Plaintiff was also coaxed to withhold the truth by her boyfriend and other "people outside who [she] do[es] not know

---

[5] There is no evidence of record that Mr. Walsh was aware of what or how much Mr. Barclay had to drink. Mr. Walsh testified that he thought Mr. Barclay had just arrived and did not see him with a drink in his hand.

by name or face." Plaintiff was never threatened by anyone in connection with the incident.

Upon learning her injury had been caused by a firearm, plaintiff went to the hospital. She was accompanied by her boyfriend. She reported to emergency room personnel and later to a police officer who arrived at the hospital that she had been injured while walking her dog in a nearby playground near a group of youngsters by what she "thought may be a firecracker."[6]

Plaintiff testified that she was "afraid" truthfully to relate what happened "because public opinion was pretty much against telling the truth" and having lied once, she "was afraid to go back." Plaintiff told her boyfriend that she did not want to get the officers in trouble and was "not really hurt that bad." Mr. Barclay expressed appreciation to plaintiff's boyfriend upon learning of the story plaintiff told about her injury and sent plaintiff flowers for which she thanked him.

Several days later, an anonymous female caller contacted the police department and reported the incident. The report was referred to the Internal Affairs Division (IAD) which then commenced an investigation. In June 2000, the IAD interviewed plaintiff, the bar owner, his sister who was working in the kitchen, the bartender and another off-duty police officer

---

[6] No bullet was removed from plaintiff's leg and it is unclear whether she was struck by a bullet or by flying debris from the impact of the bullet.

who had been present.  In July 2000, the IAD interviewed plaintiff's boyfriend.  The IAD then apprised the chief of the Special Investigations Unit of the District Attorney's Office of the information obtained.  She concluded on October 27, 2000 that no criminal charges against Barclay or Walsh were warranted.  The IAD then interviewed Mr. Barclay and Mr. Walsh on November 3, 2000.

Several weeks later the IAD rendered a report concluding that both officers may have violated Police Department directives including those requiring the use of care in handling firearms and immediate notification to Police Radio of the discharge of a firearm.  The report was referred for action to their commanding officer on November 28, 2000.

### IV.  Discussion

There is no respondeat superior liability under § 1983.  See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1295 (3d Cir. 1997).  A municipality is liable for a constitutional tort only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of.  Id.  (quoting Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978)).  See also Williams v. Borough of West Chester, 891 F.2d 458, 476 (3d Cir. 1989)("[a] municipality may be liable under section 1983 only if it can be

shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice").

"Policy" is made when a decision-maker with final authority to establish municipal policy with respect to the action in question issues an official proclamation, policy or edict. A "custom" is a course of conduct which, although not formally authorized by law, reflects practices of state officials that are so permanent and well-settled as to virtually constitute law. A decision by an official with final discretionary decision-making authority, or ratification by such an official of the acts of a subordinate, can constitute a "policy." See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Keenan v. City of Philadelphia, 983 F.2d 459, 468 (3d Cir. 1992); Omnipoint Communications, Inc. v. Penn Forest Twp., 1999 WL 181954, *10 n.4 (M.D. Pa. 1999); Callahan v. Lancaster-Lebanon Intermediate Unit 13, 880 F. Supp. 319, 341 (E.D. Pa. 1994).

A municipality may also be liable under § 1983 for a failure properly to train, supervise or discipline employees when such failure reflects a policy of deliberate indifference to the constitutional rights of citizens. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). To sustain such a claim, a plaintiff must show that a responsible municipal policymaker had

contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates.  See City of Canton, 489 U.S. at 390; Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir. 1998); Simmons v. City of Philadelphia, 947 F.2d 1042, 1059-70 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992).

A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures.  See Jones v. City of Chicago, 787 F.2d 200, 205 (7th Cir. 1986); Fulkerson v. City of Lancaster, 801 F. Supp. 1476, 1483 (E.D. Pa. 1992), aff'd, 993 F.2d 876 (3d Cir. 1993).  It is not sufficient merely to show that a particular officer acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury.  See Simmons, 947 F.2d at 1060.  Any failure to train or supervise adequately, of course, must also cause the violation about which the plaintiff complains.  Id. at 1065.

A plaintiff must show that the cause of his harm was a constitutional violation and that the municipal defendant was

responsible for this violation.  <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 120 (1992).

Plaintiff contends that she was deprived of her "life (physical safety), liberty and pursuit of happiness without due process of law under the Fifth and Fourteenth Amendments" when Mr. Barclay caused Mr. Walsh's firearm to discharge and that her right to "freedom from the use of coercion and intimidation" was violated when she was asked not to report what happened to protect the individual defendants' jobs.

The Fifth Amendment, of course, does not proscribe state action.  <u>See</u> <u>Bartkus v. Illinois</u>, 359 U.S. 121, 158-59 (1959); <u>Nguyen v. United States Catholic Conference</u>, 719 F.2d 52, 54 (3d Cir. 1983); <u>Huffaker v. Bucks County Dist. Attorney's Office</u>, 758 F. Supp. 287, 290 (E.D. Pa. 1991).  Plaintiff clearly was not deprived of her life.  There is no abstract right to the pursuit of happiness secured by the Fourteenth Amendment.  While it may be improper and in some circumstances even unlawful, it is not unconstitutional in the absence of any actual or threatened retaliation for an official to beseech someone to withhold information which might jeopardize the official's job.  Although

not so specified, the only discernable constitutional right remotely implicated is the liberty interest in bodily integrity.[7]

In any event, Messrs. Walsh and Barclay were not acting under color of state law when the firearm discharged. Although off-duty police officers may act under color of state law if they "purport to exercise official authority," it is well-settled that "a police officer's purely private acts which are not furthered by any purported state authority are not acts under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994). That an individual is known to be a police officer or identifies himself as an off-duty police officer does not convert his private acts into state action. See Nonnemaker v. Ransom, 1999 WL 387084, *3-4 (E.D. Pa. May 26, 1999). The defendant officers were drinking and socializing in a bar after a soccer practice. Mr. Barclay planned to play a practical joke on Mr. Walsh by hiding his wallet. At no time during the entire sequence of events did either officer purport to exercise state authority.

---

[7] Although she nowhere so specifies, plaintiff is presumably complaining about a deprivation of substantive due process as she does not suggest that the infliction of injury to her in the circumstances may have been proper if some appropriate procedure had first been employed. As such, plaintiff would have to show official conduct which was so egregious, outrageous or malicious as to shock the conscience. See County of Sacramento v. Lewis, 523 U.S. 833, 847 N.8 (1998); Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999). She has not done so.

It is also uncontroverted that the firearm was accidentally discharged. There is no liability under § 1983 for injury resulting from negligent conduct. See Lewis, 523 U.S. at 848-49; Daniels v. Williams, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property").

One cannot reasonably find from the competent evidence of record that either named individual defendant violated plaintiff's constitutional rights. In the absence of any such violation, the City also cannot be found liable under § 1983.

Moreover, the only basis for municipal liability asserted is the alleged "policy and/or custom and/or practice of the City of Philadelphia to inadequately and improperly investigate citizen complaints of police misconduct; and such acts of misconduct were tolerated and attempted to be covered up by coercing and intimidating citizens, including plaintiff herein, to discourage them from making complaints about police officers who violated their constitutional rights."

Plaintiff has presented absolutely no competent evidence from which one could reasonably find that the City has a policy or custom of inadequately investigating or attempting to cover up citizen complaints of police misconduct. In this very case, the IAD promptly responded to an anonymous report and

proceeded reasonably to investigate it to conclusion. The officers in question were cited for possible violations of Department directives. Plaintiff suggests that the apparent lack of investigative activity between the end of July 2000 and November 2000 may support her claim of a policy or custom of inadequate investigations and cover-up of citizen complaints of police misconduct. No reasonable person could so conclude. The IAD concluded all logical investigation within seven weeks of receiving a report of the incident except for the interviews of Messrs. Walsh and Barclay. Those interviews were conducted promptly after the District Attorney's Office advised that they would not be charged with any crime.

The City contends with considerable force that it has governmental immunity from liability on plaintiff's state law claims pursuant to the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 et seq.[8]

It is an offense to intimidate a crime victim or witness. See 18 Pa. C.S.A. § 4952. Whether the Pennsylvania courts would recognize a civil action for such conduct and whether plaintiff would qualify on the record presented, even if they did, seems doubtful. Courts applying Pennsylvania law have

---

[8] Plaintiff's suggestion that the personal property exception is applicable seems dubious in view of state court interpretations limiting recovery under § 8542(b)(2) to property losses and not personal injuries. See Kearney v. City of Philadelphia, 616 A.2d 72, 75 (Pa. Commw. 1992).

found far more egregious conduct insufficient to satisfy the stringent requirement of outrageousness and atrociousness necessary to maintain an intentional infliction of emotional distress claim.  See Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).  An essential element of assault is an attempt intentionally to cause injury or an imminent apprehension of harmful (or offensive) bodily contact.  See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994); Sides v. Cleland, 648 A.2d 793, 796 (Pa. Super. 1994).  Similarly, an essential element of battery is an act intended to cause harmful (or offensive) contact or imminent apprehension of such contact.  See Herr v. Booten, 580 A.2d 1115, 1117 (Pa. Super. 1990).  There is no evidence that any defendant acted with such intent.

Whether Mr. Walsh may have been negligent in entrusting his bag to Mr. Barclay could turn on his awareness of the amount of alcohol consumed by Mr. Barclay or of any visible effects thereof.  Whether Mr. Barclay was negligent may turn on what he knew or reasonably should have understood about the contents of the canvas bag.

In any event, in the absence of any viable federal claim, the remaining purely state law claims and issues should be resolved by the state courts.  There are no considerations of judicial economy, convenience or fairness which provide a justification for an exercise of supplemental jurisdiction and

the interests of comity are clearly best served by allowing the state courts to adjudicate plaintiff's state law claims. See Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). The action will thus be remanded pursuant to 28 U.S.C. § 1367(c). See City of Chicago v. Intern. College of Surgeons, 522 U.S. 156, 172-73 (1997); Hudson United Bank v. LiTenda Mortgage Corp., 142 F.3d 151, 157 (3d Cir. 1998); Basile v. H&R Block, Inc., 897 F. Supp. 194, 199 (E.D. Pa. 1995).

## V. Conclusion

Plaintiff's constitutional claims appear contrived in an effort to embellish a negligence case and in any event are not supported. The named individual defendants were not acting under color of law. Even if they were, their conduct would not amount to a federal constitutional violation. As such, the City also cannot be found liable under § 1983. Plaintiff in any event has presented no competent evidence to show any policy or custom of the City of a disregard for constitutional rights or indeed any policy or custom of any kind which caused plaintiff's injury.

Summary judgment will be granted in favor of defendants on plaintiff's federal claims. Plaintiff's state tort claims will be remanded. An appropriate order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STACEY STRAUSS** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH WALSH, FRANK BARKLEY,** | : | |
| **CITY OF PHILADELPHIA and** | : | |
| **PHILADELPHIA POLICE DEPARTMENT** | : | NO. 01-3625 |

| | | |
|---|---|---|
| **STACEY STRAUSS** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH WALSH** | : | NO. 02-4383 |

### O R D E R

**AND NOW,** this          day of December, 2002, upon consideration of defendants' Motions for Summary Judgment (Docs. #7 & 11 at No. 01-3625) and plaintiff's response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motions are **GRANTED** and **JUDGMENT** is **ENTERED** in these consolidated actions for each defendant and against plaintiff on her federal claims; and, pursuant to 28 U.S.C. § 1367(c), these consolidated actions are otherwise **REMANDED** to the Court of Common Pleas of Philadelphia for resolution of plaintiff's state law claims.

**BY THE COURT:**

_____
**JAY C. WALDMAN, J.**